# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CA-01487-COA

**MARCUS McGREW**                                                              **APPELLANT**

**v.**

**VALERIE McGREW**                                                              **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 03/05/2019 |
| TRIAL JUDGE: | HON. MICHAEL CHADWICK SMITH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | J. MACK VARNER |
| | CLIFFORD C. WHITNEY III |
| ATTORNEY FOR APPELLEE: | VALERIE McGREW (PRO SE) |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 11/17/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE WILSON, P.J., WESTBROOKS AND McCARTY, JJ.

### McCARTY, J., FOR THE COURT:

¶1.     Marcus McGrew appeals from the judgment of the Forrest County Chancery Court that declined to exercise jurisdiction over a child custody dispute. Pursuant to the Uniform Child Custody and Jurisdiction Enforcement Act, the court found that Mississippi was an inconvenient forum and that California was the more appropriate forum to oversee the matter. Finding no error, we affirm the chancery court's judgment.

### FACTS AND PROCEDURAL HISTORY

¶2.     Valerie and Marcus McGrew were married in 2004 and had four children together. Twelve years into the marriage, Valerie filed a complaint for divorce with the Forrest County Chancery Court. She later requested and was granted a dismissal of her complaint.

However, Valerie filed another complaint for divorce less than a year later. Even though Marcus never received service of process for the second complaint, he still answered and even submitted his own counterclaims.

¶3. The couple again attempted to reconcile and decided that relocating to a new state would help salvage their marriage. The family subsequently moved to California to stay with Valerie's father while they determined where their new permanent home would be. The record indicates that this move was only intended to be temporary.

¶4. One month after the move, Marcus returned to Mississippi to sell the family home. While Marcus was in Mississippi, Valerie sought a restraining order and legal separation against him in California. The California court granted Valerie a temporary restraining order against Marcus. The order awarded Valerie custody of the couple's children and prohibited Marcus from having any contact with them or with Valerie. The order was made permanent a month later.

¶5. In January 2018, Marcus filed his own complaint for divorce in Warren County, Mississippi. The complaint was later dismissed without prejudice for lack of jurisdiction. Marcus then attempted to reignite Valerie's Forrest County divorce action by filing a counterclaim. Valerie responded with a motion to dismiss, which was initially denied. She later filed another motion to dismiss on inconvenient-forum grounds. The Forrest County Chancery Court then conducted a telephonic conference with the California court. Following the conference, the Forrest County Chancery Court conducted an inconvenient-forum analysis. The court held that the inconvenient-forum analysis favored Valerie and found

California was the more convenient forum to resolve the matter.

¶6.     Marcus filed a motion to alter or amend the judgment. After conducting a hearing on the issue, the chancery court denied the motion. Marcus now appeals arguing that the chancery court improperly ceded jurisdiction to the California court.

## STANDARD OF REVIEW

¶7.     Whether a court had jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) to hear a child-custody dispute is a question of law and will be reviewed de novo on appeal. Miss. Code Ann. §§ 93-27-101 to -402 (Rev. 2018); *Hersey v. Gratton*, 136 So. 3d 1085, 1087 (¶8) (Miss. Ct. App. 2014). "However, the factual findings underpinning the jurisdiction question are reviewed under the familiar substantial evidence and abuse of discretion standard." *Id*.

## DISCUSSION

¶8.     We first note that Valerie has failed to file a brief in this matter. "While automatic reversal is not required in cases where the appellee does not file a brief, 'the appellant's argument should at least create enough doubt in the judiciousness of the trial court's judgment that this Court cannot say with confidence that the case should be affirmed.'" *Id*. at (¶9) (quoting *Selman v. Selman*, 722 So. 2d 547, 551 (¶13) (Miss. 1998)). "Upon review of the record, we can say with confidence the chancery court's decision should be affirmed." *Id*.

¶9.     The trial court determined that Valerie filed for divorce initially in Mississippi. Accordingly, the chancery court found that pursuant to the UCCJEA "Mississippi has initial

3

jurisdiction." *See* Miss. Code Ann. § 93-27-201(1)(a) ("This state is the home state of the child on the date of the commencement of the proceeding"). Marcus does not challenge this finding on appeal.

¶10. Instead, Marcus' core assignment of error concerns the trial court's next ruling—whether Mississippi could decline jurisdiction over such a case once it determined it had jurisdiction. State law controls the issue of an inconvenient forum in a domestic-relations case. Under the applicable statute, "[a] court of this state which has jurisdiction under this chapter to make a child custody determination may decline to exercise its jurisdiction at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." Miss. Code Ann. § 93-27-207(1). "This issue of inconvenient forum may be raised upon motion of a party, the court's own motion, or request of another court." *Id*. In this case, the trial court raised the issue sua sponte, as allowed under the statute.

¶11. The statute sets out seven factors that "shall" be considered. Miss. Code Ann. § 93-27-207(2). Those factors are:

(a) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child;
(b) The length of time the child has resided outside [of Mississippi];
(c) The distance between the court in [Mississippi] and the court in the state that would assume jurisdiction;
(d) The relative financial circumstances of the parties;
(e) Any agreement of the parties as to which state should assume jurisdiction;
(f) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
(g) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence; and

4

> (h) The familiarity of the court of each state with the facts and issues in the pending litigation.

Miss. Code Ann. § 93-27-207(2)(a)-(h).

¶12. In one appeal applying the inconvenient-forum statute, the Supreme Court found that when two children had "lived in Alabama for 2 and ½ years" and when the "evidence concerning the effects of visitation with their father [was] more readily in Alabama than in Mississippi," it was not manifest error for a chancery court to rule "that Mississippi is an inconvenient forum and Alabama has the most appropriate forum." *Stowers v. Humphrey*, 576 So. 2d 138, 142 (Miss. 1991).

¶13. We also found "substantial evidence in the record" when a chancery court held "that Texas was a more convenient forum than Mississippi" in the case of *Yeager v. Kittrell*, 35 So. 3d 1221, 1226 (¶29) (Miss. Ct. App. 2009). There, the children had primarily lived in Texas for several years, and "all of the current evidence relevant to the determination of custody matters [was] located in Texas," including the children's "school and health records[.]" *Id*. at (¶¶23, 27).

¶14. In this case, the chancery court considered each of the statutorily provided factors when it conducted the inconvenient-forum analysis. When looking to "[w]hether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child," the court found that "[i]n the California case, there were domestic violence allegations submitted by [Valerie]." As a result of the allegations, a restraining order had been issued against Marcus. The chancery court determined that "since the children are in California, that state would best protect the children should there be any

5

domestic violence in the future."

¶15. The court then looked to the "length of time the children had resided outside of Mississippi," the distance between the Mississippi court and the California court, and "the nature and location of the evidence required to resolve the pending litigation, including testimony of the child[ren]." At the time of the analysis, the children had been living "and settled" in California for approximately seventeen months. The court found that the great distance between Mississippi and California would cause an undue burden should Mississippi retain jurisdiction. In addition to a financial burden, the children would likely have to miss school if they were to testify, and an "appointment of a Guardian Ad Litem would be problematic and likely result in undue expense given the location of the children."

¶16. The chancery court found the "relative financial circumstances of the parties" factor to be neutral. The factor requiring the court to look to "[a]ny agreement of the parties as to which state should assume jurisdiction" was determined to be inapplicable because there was no such agreement in place.

¶17. Next, the court considered the "ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence" and the "familiarity of the court of each state with the facts and issues in the pending litigation." The chancery court found that the California court already had the matter set for trial that very same month. Further, the California court had already "ruled on a number of temporary features in this matter, and discovery [had] been initiated in some form." In comparison, the Mississippi court had only ruled on a motion to dismiss. The court ruled that the record in California was

6

"replete with assertions, facts, and opinions that render that venue with more familiarity with the issues."

¶18. Lastly, the court considered "a final relevant factor" of "the parties' intent to relocate to California." The court found that Valerie had family in California and that both parties had initially traveled with their children to California together. The court concluded that there was nothing to indicate "an elaborate forum-shopping scheme by [Valerie]."

¶19. Having considered each of the factors, the chancery court held that the inconvenient forum analysis favored Valerie "overwhelmingly" and found this "renders California as a more convenient forum to resolve this matter."

¶20. Upon review of the record and the chancery court's detailed findings, we find substantial evidence in the record to support the chancery court's decision. Accordingly, we hold that it was not an abuse of discretion to rule that California was the more convenient forum to determine custody issues. Therefore, we affirm the chancery court's findings that California is the appropriate forum.

¶21. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, McDONALD AND LAWRENCE, JJ., CONCUR.**